29 C.C.P.A.(Patents)

## In re GLADECK.

### Patent Appeal No. 4540.

Court of Customs and Patent Appeals.
February 2, 1942.

George S. Hastings, of Brooklyn, N. Y. (Tennes I. Erstad, of Brooklyn, N. Y., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge..

This is an appeal from a decision of the Board of Appeals of the United States Pat-
ent Office affirming that of the Primary Examiner rejecting certain claims of an application for a patent for new and useful improvements in "Binder and Wrapper Material Feed for Cigar Machines". Twenty-two claims were allowed.

Appeal was taken to this court from the decision of the board on the following rejected claims: 14, 32, 34, 39, 55, 58, 62, 64, and 66. At the oral argument appellant moved to dismiss the appeal as to claims 14, 34, 39, 58 and 62 which motion will be granted. Therefore the appeal concerns claims 32, 55, 64 and 66. All of these claims were rejected in view of the prior art and claim 32 was further rejected as being drawn to an aggregation.

The involved claims read as follows:

"32. The combination with a cigar binder cutting bed provided with a binder cutting die, of a source of supply of cigar forming sheet material, automatic means for feeding and spreading said sheet material over said cutting die and bed, and a device for spraying a flavoring solution on the upper face of the sheet material fed to said die."

"55. In a cigar machine, the combination with a cutting bed provided with a cutting die, of automatic means for feeding sheet material over said cutting die and bed, mechanism coacting with said die to cut a section from the sheet material, means for transporting the severed section away from said cutting die and bed, and means for removing from the die that portion of said material remaining after the section severed therefrom has been carried away by said transporting means."

"64. In a cigar machine, the combination with a suction cutting bed provided with a cigar wrapper cutting die, of automatic means for feeding a web of cigar wrapper forming sheet material to said die, means for positioning said material over said die, mechanism coacting with said die to cut a wrapper from said web while so positioned, bunch rolling mechanism, means for transporting a cut wrapper from the bed to said rolling mechanism, and means for removing the waste portion of said web from said die."

"66. In a cigar machine, the combination with a flat cigar binder cutting bed provided with a cigar binder cutting die defining an enclosed area of a shape corresponding to a cigar wrapping element, of a source of supply of cigar binder forming

sheet material, means for feeding said sheet material over said die and bed, and mechanism coacting with said die to cut a binder from sheet material positioned over said die and remove the cut section therefrom."

The references cited are:

Smith et al., 187,924, February 27, 1877.
Williams, 340,180, April 20, 1886.
Burchardi et al., 1,075,189, October 7, 1913.
Ashworth, 1,605,383, November 2, 1926.
Halstead, 1,984,795, December 18, 1934.

The invention of appellant relates to a machine, for the manufacture of cigars, more particularly to automatic binder and wrapper material feeders to the binder and wrapper cutting dies respectively.

The patent to Williams relates to a cigar wrapper cutting machine and discloses every element alleged to be patentable in the appealed claims except means for spraying the tobacco with a flavoring liquid and mechanism for removing waste material after cutting.

The Ashworth patent relates to machines for cutting sheet material, specifically leather to be used in heels for shoes. It discloses a cutting die provided with a brush member for removing the waste portions of material after cutting.

In view of our conclusion it is not necessary to refer to the Smith et al., the Burchardi et al. and the Halstead patents.

One of the reasons given below for the rejection of claim 32 is that it was drawn to an aggregation in that, between the feeding and cutting means, and the "device for spraying a flavoring solution on the upper face of the sheet material" there is no coaction. We are of opinion that such ground for rejecting the said claim is sound, and therefore it is unnecessary to consider the prior art with relation to that claim. The cutting and feeding means, whether or not the tobacco is sprayed, would operate in precisely the same manner, and the spraying must have the same effect on the tobacco no matter what is done to it after the spraying. The combination in the claim produces no novel result but only a combination of the results found in the use of the separate units of the claim. In re Goggins, 86 F.2d 419, 24 C.C.P.A., Patents, 764, and cases therein cited.

The patent to Williams is the basic reference. It discloses the use of a suction carrier for bringing the material to be cut to and from the cutting die as follows:

\* \* \* \* \*

"In Figs. 4 and 5 is shown the application of a carrier having a perforated surface to the moving of the material to or from the cutter, the drawing showing an arrangement for removing the blanks (cigar-wrappers cut from leaves) from the cutter as fast as they are severed. \* \*"

There is no drawing, or explanation in the patent of how the material could be automatically fed to the die other than the above statement. Appellant contends that the carrier of the Williams patent could not operate as an automatic feeder, and even if it were possible to reverse its operation so that it could function as a feeder, it would be inoperative in that it would probably lift more than one from the stack of leaves or disarrange the stack. Appellant urges that the statement in the Williams specification mentioning the use of the carrier as an automatic feeder, without disclosure as to how it could be done, is speculative and therefore insufficient to be a proper anticipation of the invention alleged to be present in the appealed claims. This contention would be sound, if in view of the said statement in the patent, it would have required the flash of inventive genius to have modified the Williams device so that a synchronized automatic feeder carrier could be provided therein.

It seems to us that Williams plainly suggested the use of an automatic feeder carrier and that it would require only the exercise of mechanical skill to provide such a carrier for his apparatus and synchronize it with the mechanism shown in the patent. The Primary Examiner clearly states how simply this could be done, as follows:

"\* \* \* For example, in Figs. 4 and 5, a suction carrier similar to carrier S could be positioned at the right of cutter A to carry a sheet from a loading station at which point a sheet could be manually placed from a source of supply on the under surface of the carrier and held by suction thereon. Then after carrier S removes a sheet, the proposed carrier could move horizontally over the die and the suction could be cut off from said carrier to deliver the leaf on the die in the same manner that the suction is cut off from carrier S when a sheet is delivered on stack t. These suggestions of the physical structure are entirely derived from Williams, page 2, lines 40 to 45. [which we

have quoted above from the Williams patent] The addition of such a carrier to the structure illustrated by Williams would require only the usual skill of one versed in the art."

Claim 55 was rejected on the patent to Williams and held not to be patentably different therefrom merely by the addition to it of a clearing means, because, "the use of a brush to remove excess material is common in various arts and to apply it to the Williams construction would be lacking in patentable merit." In view of the broad wording of the claim with respect to the removing means, no other holding would be proper, particularly in view of the patent to Ashworth. Appellant contends that the Ashworth patent "relates to an art too remote to teach one in the cigar machine art how to remove sticky waste tobacco from a die.", and states in his brief that "It was to avoid this sticking that appellant's brush was made to rotate." There is no limitation in claim 55 showing that a rotating brush, or one of any other kind, is part of the combination. As far as this contention is concerned the Ashworth patent is clearly analogous to the Williams patent since it is concerned merely with clearing waste from the die.

Claims 64 and 66 were held to be unpatentable in view of the patent to Williams when combined with the Ashworth patent. Claim 64 merely adds to claim 55 means for positioning over the die the material to be cut, a bunch rolling mechanism and means for transporting cut wrappers to the rolling mechanism. In view of the slight modification suggested in the Williams patent, the feeding carrier of that device would position the material over the cutting die. It is apparent in the Williams patent that there is in the cigar making machine in which the device of Williams is used, some type of bunching mechanism in which the wrappers are to be applied to the bunched tobacco, and likewise means for transporting the cut wrappers to the rolling mechanism. We do not think the alleged patentable limitations of claim 64 are sufficient to render the claim patentable over the prior art.

Claim 66 is the broadest of the appealed claims in that, in addition to limitations hereinbefore disposed of on the prior art, it is not limited to automatic feeding means for the material to be cut. It is clearly anticipated by the patent to Williams.

The motion to dismiss the appeal as to claims 14, 34, 39, 58 and 62 is granted, and the decision of the Board of Appeals, for the reasons hereinbefore set out, is affirmed as to claims 32, 55, 64 and 66.

Affirmed.